UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | |
|---|---|
| ULTRASONIC POWER CORPORATION,<br><br>  Plaintiff,<br><br>v.<br><br>CREST ULTRASONICS CORP.,<br><br>  Defendant. | CIVIL ACTION NO. 07-CV-50220<br><br>Judge Frederick J. Kapala<br><br>Magistrate Judge P. Michael Mahoney |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

This action arises from a relationship that developed between two companies over thirty-five years ago when both companies were originally from New Jersey. Plaintiff, Ultrasonic Power Corporation ("UPC"), now an Illinois corporation split from defendant, Crest Ultrasonics Corp. ("Crest"), a New Jersey corporation, in the 1970's. For over a decade thereafter, UPC and Crest operated their respective businesses from the same building in Trenton, New Jersey. Now UPC has sued Crest for its use in marketing of terminology that Crest has used since 1960's.

Crest moves the Court to transfer this action because Northern District of Illinois is not the appropriate venue for a dispute over the use of the terms "Vibra-Bar" and "simultaneous multi-frequency" that arises from the relationship that Crest and UPC maintained in New Jersey in the 1970's and 1980's before UPC relocated its business operations to Illinois. Indeed, numerous material non-party witnesses still reside in New Jersey, beyond the subpoena power of this Court. The inconvenience of material non-party witnesses residing outside this District is compounded by the fact that, to the best of Crest's knowledge, no witnesses with personal knowledge of Crest and UPC's past relationship reside in Illinois. Thus, for the convenience of

the parties and witnesses, the Court should transfer this action to the District of New Jersey, Trenton Vicinage.

I. **STATEMENT OF FACTS**

A. **Corporate History of Crest and UPC**

Crest is a New Jersey corporation headquartered in Trenton, New Jersey. Amended Complaint ¶ 2; Counterclaim ¶ 1. Crest was founded by Edward Cook in 1963. Counterclaim ¶ 5. In the 1960's, Crest commenced the manufacturing, marketing, and selling of ultrasonics cleaning products that utilize the Vibra-bar transducer system.[1] Counterclaim ¶ 7. Since the 1960's to the present, Crest has continuously identified its ultrasonics systems that utilize the Vibra-Bar transducer systems with the terms "Vibra-Bar" and has included the term "simultaneous multi-frequency" in its marketing and sales materials to describe the features of those products. Counterclaim ¶ 8. While employed by Crest, Edward Cook worked to develop the use of the Vibra-Bar transducer system and its simultaneous multi-frequency features. Counterclaim ¶ 15.

In 1972, Edward Cook left Crest and founded UPC. Counterclaim ¶ 9. In addition to Edward Cook, UPC's workforce consisted of approximately seven to eight employees that were formerly employed by Crest. Counterclaim ¶ 11; Declaration of J. Michael Goodson ("Goodson Decl.") ¶ 13. Like Crest, UPC manufactured, marketed, and sold ultrasonics cleaning equipment. Counterclaim ¶ 10. For several years during the 1970's and 1980's, UPC operated its business in an office building in Trenton, New Jersey. Counterclaim ¶ 12. This office building was rented and partially occupied by Crest. Counterclaim ¶ 13. UPC sub-leased its

---

[1] The Vibra-Bar design consists of two transducer stacks which permit simultaneous multiple frequencies within an ultrasonic cleaning system. Counterclaim ¶ 7.

office space from Crest. Counterclaim ¶ 13. UPC continued to operate from its New Jersey headquarters until it moved to Illinois in the mid-1980's. Counterclaim ¶ 13.

Today, Crest and UPC are roughly equal in size. Crest's workforce numbers approximately 40 employees, and upon information and belief, UPC's workforce numbers approximately 25 employees. Goodson Decl. ¶¶ 17-18.

**B.     Crest's Acts Alleged to Cause Infringement Occurred In New Jersey**

From the 1960's to the present, Crest has marketed and sold its ultrasonics products throughout the United States, and has used the terms "Vibra-Bar" and "simultaneous multi-frequency" (collectively, the "Terms") to describe the features, characteristics, and qualities of its ultrasonic systems and products that utilize the Vibra-Bar transducer design in connection with this national marketing and sales effort.[2] Goodson Decl. ¶ 5. Crest selected the Terms to identify and describe its ultrasonics products that utilize the Vibra-Bar transducer design in its Trenton, New Jersey headquarters, and oversaw the use of those Terms in the marketing and sales of its ultrasonics products from those headquarters. Goodson Decl. ¶ 7. Accordingly, the current Crest employees responsible for the selection, adoption and use of the content included in Crest's marketing and sales materials, including the Terms, as well as the marketing and sale of Crest's ultrasonic products, are in New Jersey. Goodson Decl. ¶ 8. Moreover, all of Crest's records relating to its selection, adoption, and use of the Terms, and its marketing and sale of its ultrasonics products, are in New Jersey. Goodson Decl. ¶ 9.

In addition, Crest is presently aware of three former employees residing in the New Jersey area who are competent to testify regarding Crest's continuous use of the Terms since the

---

[2] Crest concedes that it has continuously used the Terms in the marketing and selling of its ultrasonics products. Counterclaim ¶ 8. Crest, however, denies that its use of the Terms constitutes trademark infringement.

1960's. These non-party witnesses are: (1) William Cane, resides at 60 River Drive, Titusville, New Jersey 08560; (2) Donald Steaver resides at 108 Old 518 Road East, Lambertville, New Jersey 08530; and (3) Maryann Wylie resides at 103 Winding Way, Morrisville, Pennsylvania 19067. Moreover, upon information and belief, most of the former Crest employees that worked for UPC beginning in 1972 still reside in the New Jersey area.[3] Goodson Decl. ¶¶ 11 and 15.

### C. The Filing Of The "Vibra-Bar" Application Occurred In New Jersey

Crest's Counterclaim contends that UPC knew or should have known that Crest had identified its ultrasonics systems that utilize the Vibra-Bar transducer systems with the terms "Vibra-Bar" and has included the term "simultaneous multi-frequency" in its marketing and sales materials to describe the features of those products since the 1960's. Counterclaim ¶ 14. Several UPC employees, including Crest's founder, Edward Cook, knew that Crest identified its Vibra-Bar transducer systems with these Terms because of their former employment with Crest. Counterclaim ¶ 14. Nevertheless, UPC applied to register the term "Vibra-Bar" as a trademark in 1984 (the "Application"). Counterclaim ¶ 16. The Application confirms that UPC was still located in Trenton, New Jersey when the Application was filed with the United States Patent and Trademark Office ("PTO"). Counterclaim, Ex. A. Lastly, the Application was prepared by the New Jersey law firm of Sperry, Zoda & Kane. Counterclaim, Ex. A. This law firm still actively practices law in New Jersey. Declaration of Frank L. Politano, Esq. ("Politano Decl.") ¶ 5.

## II. ARGUMENT

### A. This Case Should be Transferred to the District of New Jersey

The Court enjoys broad discretion to transfer this case from its present inconvenient forum to the District of New Jersey, where Crest is located. 28 U.S.C. § 1404(a) provides:

---

[3] Crest believes that Edward Cook currently resides in or near Vero Beach, Florida. Goodson Decl. ¶ 14.

> For the convenience of the parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*See also Sassy, Inc. v. Berry,* 406 F. Supp. 2d 874, 875 (N.D. Ill. 2005) ("The decision to transfer is left to the sound discretion of the trial court."). Transfer of venue is appropriate when the following three requirements are met: (1) venue is proper in both the transferor and transferee districts; (2) the transfer is for the convenience of the parties and witnesses; and (3) the transfer serves the interests of justice. *Sassy, Inc.*, 406 F. Supp. 2d at 875; *Chukwu v. Air France,* 218 F. Supp. 2d 979, 988 (N.D. Ill. 2002). Here, all three requirements are met.

### 1. Venue is proper in this District and in the District of New Jersey

#### a. Venue is proper in the Northern District of Illinois

Venue is technically proper in this District because this action, which is not founded solely on diversity of citizenship, may be brought in a judicial district that may exercise personal jurisdiction over a corporate defendant. 28 U.S.C. § 1391(c). Crest sells its ultrasonics products throughout the United States, including in Illinois, and accepts, for purposes of this motion only, that it is subject to the Court's personal jurisdiction.

#### b. Venue is proper in the District of New Jersey

Venue also is proper in New Jersey because Crest is a New Jersey corporation with its principal place of business in Trenton, New Jersey. Counterclaim ¶ 1; 28 U.S.C. § 1391(b)(1);.

Further, a substantial part of the events giving rise to the claims occurred in New Jersey. 28 U.S.C. § 1391(b)(2). Crest selected the Terms to identify and describe its ultrasonics products that utilize the Vibra-Bar transducer design in its Trenton, New Jersey headquarters. Counterclaim ¶ 7. Crest also oversaw the use of those Terms in the marketing and sales of its ultrasonics products from those headquarters. Counterclaim ¶ 8. The decisions concerning the

selection, marketing, and use of the Terms were made in Trenton, New Jersey, and Crest's marketing and sales personnel are also located there. Goodson Decl. ¶¶ 6-9.

Moreover, all the events relating to UPC's allegedly fraudulent conduct occurred in the District of New Jersey. As the Application plainly demonstrates, UPC was still located in New Jersey when it filed the fraudulent trademark application. Politano Decl. ¶ 5. The Application was executed in New Jersey by UPC's President, and then filed by UPC's New Jersey trademark counsel. Thus, because Crest had allegedly committed acts in New Jersey that lead to the claimed infringement, and UPC committed fraud in New Jersey, venue is appropriate in the District of New Jersey under 28 U.S.C. § 1391(b)(2).

### 2. Transfer is convenient for the parties and witnesses

Having determined that an action could properly be brought in either the transferor or transferee district, the Court should then consider the convenience of the parties and witnesses. *See Chukwu,* 218 F. Supp. 2d at 988. Factors in weighing the parties and witnesses' convenience are: (a) the plaintiff's choice of forum; (b) the situs of the material events; (c) ease of access to sources of proof; (d) availability and cost of obtaining attendance of witnesses; and (e) the convenience of the parties. *Id.* at 988-89; *Yoder v. Ryan,* 318 F. Supp. 2d 601, 605 (N.D. Ill. 2004). Here, the convenience factors overwhelmingly favor transfer to the District of New Jersey.

### a. UPC's choice of forum has minimal value because the central activities giving rise to the causes of action did not occur in Illinois

The plaintiff's choice of forum "is not absolute and will not defeat a well-founded motion to transfer." *Wen Products, Inc. v. Master Leater, Inc.,* 899 F. Supp. 384, 385-86 (N.D. Ill. 1995). "The weight given to plaintiff's choice of forum is lessened if the chosen forum has [a] relatively weak connection with the operative facts giving rise to the claim." *Int'l Truck and*

*Engine Corp. v. Dow-Hammond Trucks Co.,* 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002). This is true even in cases where the chosen forum is plaintiff's home forum. *Id.* This Court has not hesitated to transfer trademark infringement actions for the convenience of the parties and witnesses. *Id.* at 905-06; *SRAM Corp. v. Sunrace Roots Ent. Co., LTD.*, 953 F. Supp. 257, 259-60 (N.D. Ill. 1997) (plaintiff's choice of home forum insufficient to defeat motion to transfer venue in trademark infringement action); *Wen Products*, 899 F. Supp. at 385-86 (same).

The central activities giving rise to the causes of action occurred in New Jersey, not Illinois. Therefore, UPC's filing of its Complaint in this District is entitled to minimal weight.

### b.  New Jersey is the situs of the material events

"Lanham Act cases generally focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often **the critical and controlling consideration.**" *See Interlochen Center for the Arts v. Interlocken Int'l Camp, Inc.,* Case No. 01 C 7082, 2002 U.S. Dist. LEXIS 17298, at *16 (N.D. Ill. Sept. 12, 2002) (quotations omitted) (emphasis added); *SRAM Corp.*, 953 F. Supp. at 259; *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470 (N.D. Ill. 1992).

Here, the central activities for the alleged trademark infringement are in New Jersey. As noted, Crest's decision to select and use the Terms took place in New Jersey, its sales and marketing of its ultrasonics products are directed from New Jersey, and Crest's relevant documents and employees are in New Jersey. Goodson Decl. ¶¶ 6-9. Similarly, UPC was headquartered in New Jersey from 1972 to the mid-1980's. Counterclaim ¶ 12. Thus, UPC's decision to select and use the Terms took place in New Jersey, and its sales and marketing of its

ultrasonics products were directed from New Jersey at all times prior to filing the Application in 1984.[4]

Moreover, UPC prepared the Application in New Jersey with the assistance of its New Jersey trademark counsel. Because both Crest's alleged infringement and UPC's alleged fraud occurred in New Jersey, this forum's connection to this dispute is tenuous at best. In such circumstances, cases are routinely transferred to the relevant forum. *See, e.g., Int'l Truck and Engine Corp. v. Dow-Hammond Trucks Co.,* 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002) (venue transferred to California in trademark infringement suit where California was situs of the infringing activity).

### c. New Jersey provides relative ease of access to sources of proof

All documents related to Crest's initial selection and adoption of the Terms, and its continuous marketing and sale of ultrasonic products with these Terms, are located in New Jersey. Crest's employees, as well as former employees of both Crest and UPC who are familiar with the parties' past relationship, are located in New Jersey. Moreover, any documents relating to the preparation and filing of the Application are located with UPC's New Jersey counsel. Hence, this factor strongly favors transfer. *Int'l Truck and Engine Corp.,* 221 F. Supp. 2d at 904 (finding ease of access to proof favored venue transfer where defendant's activities in requested venue were what led to the dispute).

### d. The convenience of the witnesses strongly favors transfer to New Jersey where material non-party witnesses reside

---

[4] To the extent that UPC attempts to argue that it somehow obtained the rights to one or both of the Terms when it first commenced business operations, then these alleged events would also militate in favor of transfer to New Jersey. This is true because any disposition of the Terms (if at all) would have occurred in New Jersey and any legal counsel and documents involved in any such a transaction would be found there as well.

In deciding whether a case should be transferred pursuant to Section 1404(a), "the convenience of the witnesses is one of the most important factors to be considered." *Moore v. A&T Latin America Corp.*, 177 F. Supp. 2d 785, 790 (N.D. Ill. 2001). Congruently, Courts address two other important related factors -- the availability of the compulsory process to require the presence of unwilling witnesses and the cost of obtaining attendance of the willing witnesses. *Ful Inc. v. Unified School Dist. Number 204*, 839 F. Supp. 1307, 1312 (N.D. Ill. 1993). These factors are important because obtaining live testimony of witnesses at trial is preferred over other means of presenting evidence. *Ful Inc.*, 839 F. Supp. at 1312 ("the presence of potential non-party witnesses outside the subpoena power of the court, weighs heavily in a transfer decision"); *Bally Manufacturing Corp. v. Kane*, 698 F. Supp. 734, 738 (N.D. Ill. 1988) (same).

Here, the convenience to the witnesses strongly warrants transfer of this case to the District of New Jersey. First, it is Crest's understanding that no witnesses residing in this District have personal knowledge of either the parties' past relationship or the filing of the Application in 1984. Goodson Decl. ¶ 16. Second, the great majority of material non-party witnesses are in New Jersey. Goodson Decl. ¶¶ 8-10. Three such witnesses are former Crest employees, William Cane, Donnie Steaver, and Maryann Wylie, and their testimony is highly probative of the fact that Crest has continuously used the Terms since the 1960's. Goodson Decl. ¶ 10.

Moreover, because UPC conducted business operations in New Jersey for over a decade before moving to Illinois, numerous former UPC employees will likely be located in New Jersey. These former UPC employees, seven to eight of whom previously worked for Crest, Goodson Decl. ¶ 13, will have important information relating to Crest's use of the Terms (or lack thereof)

and UPC's knowledge of same. Lastly, UPC's former trademark counsel is in New Jersey and will possess key documents and testimony relating to UPC's Application. Thus, even at this early stage of the litigation, there are at least four material non-party witnesses, and as many as twelve non-party witnesses, that would be subject to the subpoena power of the District of New Jersey, but not this Court.[5]

Since these witnesses are not under Crest's control, it is unlikely that Crest would be able to secure their voluntary appearance at trial. *See Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (noting that no presumption exists that non-party witnesses will agree to testify at trial voluntarily). Significantly, Crest would also be unable to compel these witnesses to testify at trial since they are outside this Court's subpoena power. Therefore, Crest would be forced to present their testimony by deposition.

The prospect of using lengthy deposition testimony from these key witnesses unfairly prejudices Crest by impeding its ability to present an effective case at trial. *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947) ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants"); *In re Eastern Dist. Repetitive Stress Injury Litigation*, 850 F. Supp 188, 194 (E.D.N.Y. 1994) (stating that "depositions, however, even when videotaped, are no substitute for live testimony."); *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 (N.D. Ga. 1992) (transferring case where

---

[5] Although Maryann Wylie resides in Morrisville, Pennsylvania, her residence is located less than 10 miles from the United States Federal Courthouse located in Trenton, New Jersey. Therefore, Ms. Wylie would be subject to the subpoena power of the District of New Jersey. Fed. R. Civ. Pr. 45(b)(2)(C) ("a subpoena may be served…outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection").

other forum provided compulsory process over key witnesses and noting "the principle that trial by live testimony is superior to trial by deposition in resolving factual questions").

Even videotaped depositions would not cure the prejudice to Crest's ability to present an effective case at trial. *Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.*, No. 99 C 1756, 1999 WL 608705, at *2 n.8 (N.D. Ill. Aug. 6, 1999) ("The possibility of taking videotaped depositions does not save plaintiffs from transfer. **Live witness testimony is superior to either printed or taped depositions**") (emphasis added).

Because the Court should not be forced to rely on deposition testimony when live testimony can be obtained, the ability to compel former employees of both Crest and UPC, as well as UPC's former trademark counsel, to testify at trial presents a paramount reason to transfer this case to the District of New Jersey. *See Waites v. First Energy Leasing Corp.*, 605 F. Supp. 219, 222-23 (N.D. Ill. 1985) (granting defendants' request to transfer venue, despite the fact that plaintiff identified material witnesses located in Illinois, because virtually all of defendants' material witnesses resided in New York and the presentation of "important evidence to the trier of fact by deposition testimony would be unsatisfactory").

Second, assuming that the New Jersey based witnesses were willing to testify at trial, the cost of obtaining their attendance in Illinois would be much greater than in New Jersey. Even at this early stage of the litigation, it is apparent that the vast majority of the non-party witnesses for this case reside in or near New Jersey, not Illinois. Goodson Decl. ¶¶ 8-10. If the Court transfers the case to New Jersey, Crest would incur minimal travel costs for the aforementioned witnesses, for example, the cost of gas mileage, instead of thousands of dollars per witness for airfare from New Jersey to Illinois, hotel accommodations and food. Thus, the convenience of the witnesses strongly favors transfer of this case to New Jersey.

### e. The convenience of the parties favors transfer to New Jersey

In assessing the convenience to the parties in transferring venue, courts have considered the parties' respective residences and their ability to bear the expense of the litigation in a particular forum. *SRAM Corp.*, 953 F. Supp. at 259-60; *Wen Products*, 899 F. Supp. at 385-86. Here, because Crest and UPC are roughly the same size companies with similar sized workforces, Goodson Decl. ¶¶ 17-18, their respective abilities to bear the cost of traveling witnesses within their control (*e.g.*, employees and experts) are the same. *SRAM Corp.*, 953 F. Supp. at 259-60; *Wen Products*, 899 F. Supp. at 386. Thus, the cost of attendance of witnesses within either Crest or UPC's control is neutral. *See Household Financial Services, Inc. v. Prestige Financial Services Corp.*, No. 99 C 1756, 1999 WL 608705, at *2 (N.D. Ill. Aug. 6, 1999) (recognizing that "the cost of attendance of witnesses within either party's control is neutral, as one of the parties will have to incur the time and expense of securing the attendance of such witnesses regardless of whether this case is litigated here or in Florida").

The cost of attendance for material non-party witnesses, however, the majority of whom are located in New Jersey, would be considerably lower were this case litigated in New Jersey. Moreover, to the extent any of these witnesses are unwilling to testify, only the District of New Jersey would have the ability to compel their attendance, as these witnesses would be outside the subpoena power of this Court. *E.g., Sky Valley Ltd. Partnership v. ATX Sky Valley*, 776 F. Supp. 1271, 1277 (N.D. Ill. 1991) (granting motion to transfer, holding that "[t]he factor weighing most heavily in favor of transfer is the location of the third party witnesses to California," and further explaining that "[t]he interest of justice is better served by ensuring the presence of live witness testimony. Thus the presence of third party witnesses outside the subpoena power of this court is a factor which weighs heavily in favor of transferring this case").

For the reasons discussed above, Crest will be greatly inconvenienced if it is required to try this action in Illinois. The party and non-party witnesses Crest plans to call at trial are located in New Jersey. Crest will incur the significantly greater cost of flying numerous non-party witnesses from New Jersey to Illinois and back, and providing them with hotel accommodations, if the case proceeds in Illinois. *Sky Valley*, 776 F. Supp. at 1277; *Int'l Truck*, 221 F. Supp. 2d at 905. Accordingly, this factor favors a transfer of venue to New Jersey.

### 3. Public interest favors transfer to New Jersey

After considering the convenience of the parties and witness, courts evaluate the public interest in having the case litigated in the transferee or transferor forum. *Chukwu*, 218 F. Supp. 2d at 989. Public interest factors include: (a) the relationship of the community to the issues in the litigation and the desirability of resolving controversies in their locale; (b) the Court's familiarity with applicable law; and (c) congestion of the respective dockets and the prospects for earlier trial. *Id.* Here, one of these factors favors transfer to New Jersey, and the other two are neutral.

#### a. New Jersey has a relationship to the litigation and an interest in its resolution

Because both Crest and UPC allege to have selected the Terms in New Jersey, and Crest has continuously directed the marketing and sales of products using these Terms from New Jersey, that state has a strong interest in this action. *See SRAM Corp.*, 953 F. Supp. at 259-60 (finding factor favored defendant's request to transfer venue where the core infringement issues revolves around activities in the district where venue was sought); *Wen Products*, 899 F. Supp. at 386 (finding district to which transfer was granted had an interest in the case because the defendant resided in and conducted its alleged trademark infringement within the state); *Habitat Wallpaper*, 807 F. Supp. at 475.

Moreover, all the events relating to UPC's fraudulent representations made in the Application occurred in the District of New Jersey. As noted, UPC was still located in New Jersey when it filed the allegedly fraudulent trademark application. Similarly, the alleged fraud occurred when the Application was executed by UPC's President and filed by UPC's trademark counsel. All this conduct occurred in New Jersey, not Illinois.

Lastly, UPC is seeking permanent injunctive relief to prevent Crest from using UPC's alleged Terms in the sale of Crest's ultrasonic cleaning products. Amended Complaint, Prayer ¶ A. The nature and extent of any such injunctive relief will necessarily have a distinct local effect in the New Jersey. *See Int'l Truck,* 221 F. Supp. 2d at 905; *Habitat Wallpaper,* 807 F. Supp. at 475 (plaintiff's assertion of claim for injunctive relief militated in favor of transfer because, if granted, the injunction would require enforcement in Massachusetts). Based upon the foregoing, the District of New Jersey has a relationship to the litigation and a strong interest in its resolution.

**b.      New Jersey courts are familiar with trademark cases**

The trademark claims underlying UPC's Complaint and Crest's Counterclaim are based on federal law, 15 U.S.C. §§ 1064(3), 1114, 1119, and 1125(a) ("the Lanham Act"), for which there is general nationwide uniformity. Thus, the District of New Jersey will be familiar with the applicable federal law.

UPC has also asserted various claims under the laws of the State of Illinois. This fact, however, does not militate against transfer because it is not at all clear at this early stage of the litigation whether Illinois law is applicable. This is especially true since the central activities giving rise to this lawsuit took place in New Jersey. *See SRAM Corp.,* 953 F. Supp. at 260 (disregarding plaintiff's claim under Illinois law in deciding motion to transfer venue because it

was too early in litigation to assess whether Illinois law actually applied). Consequently, this factor is neutral.

### c. Both districts have comparable times from filing to disposition

Federal Court Management statistics for the period ending September 30, 2007, indicate that the median time from filing to disposition in the two courts is nearly the same – 7.6 months in the District of New Jersey and 6.2 months in the Northern District of Illinois. Accordingly, this factor is neutral in the transfer determination.

## IV. CONCLUSION

For the reasons set forth above, the Court should transfer this case to the United States District Court for the District of New Jersey, Trenton Vicinage.

Dated: Chicago, Illinois
April 18, 2008

Respectfully submitted,

By: _____
Robert M. Newbury (Bar No. 2041065)
Jonathan S. Jennings (Bar No. 6204474)
J. Michael Monahan, II (Bar No. 25799)
PATTISHALL, MCAULIFFE,
NEWBURY, HILLIARD & GERALDSON LLP
311 S. Wacker Drive
Suite 5000
Chicago, IL 60606
Tel. 312) 554-8000
Fax. (312) 554-8015
Attorneys for Defendant/Counterclaim Plaintiff
Crest Ultrasonics Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) has been served upon counsel for Plaintiff, Ultrasonic Power Corporation, via electronic service and via First Class mail, postage prepaid, this 18th day of April, 2008, at the following addresses:

Amy L. Linder
Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.
1000 North Water Street
Suite 2100
Milwaukee, WI 53203-3400

William H. Dietrich
Munsch Hardt Kopf & Harr, PC
3800 Lincoln Plaza
500 North Afard Street
Dallas, TX 75204

_____
J. Michael Monahan