UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

---

ULTRASONIC POWER
CORPORATION,

                  Plaintiff,

           v.                              Case No. 07-C-50220

CREST ULTRASONICS CORP.,

                  Defendant,

              and

CREST ULTRASONICS CORP.,

                  Counter-plaintiff,

           v.

ULTRASONIC POWER
CORPORATION,

                  Counter-defendant.

---

### ULTRASONIC POWER CORPORATION'S ANSWER TO CREST ULTRASONICS CORP.'S COUNTERCLAIMS

---

Plaintiff Ultrasonic Power Corporation ("UPC Illinois"), by and through its

attorneys, Reinhart Boerner Van Deuren s.c.,  hereby answers Defendant Crest

Ultrasonics Corp.'s ("Crest") Counterclaims as follows:

## THE PARTIES

1.      Crest is a corporation organized and existing under the laws of New Jersey with a principal place of business at P.O. Box 7266 Scotch Road, Trenton, New Jersey 08628.

**ANSWER:**   UPC Illinois admits that this is the address Crest claims as its principal place of business, but lacks information sufficient to admit or deny whether a post office box is a physical office address, and therefore, denies the same.

2.      UPC is a corporation organized and existing under the law of Illinois with a principal place of business at 239 E. Stephenson Street, Freeport, Illinois 61032.

**ANSWER:**   UPC Illinois admits.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338, 1367, 2201 and 2202, as well as under 15 U.S.C. § 1211.  Moreover, UPC has consented to the Court's exercise of personal jurisdiction over it by filing its action in this Court.

**ANSWER:**   UPC Illinois admits jurisdiction is proper.

4.      Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400.

**ANSWER:**   UPC Illinois admits.

## GENERAL ALLEGATIONS

5.    Crest was founded in 1963 by Edward Cook.

**ANSWER:**  UPC Illinois admits that Edward Cook founded a company named "Crest Ultrasonics Corp" in or around 1963, but lacks information sufficient to admit or deny whether the Crest Ultrasonics Corp. in this lawsuit is the same legal entity, and therefore denies the same.

6.    At all times relevant herein, Crest has manufactured, marketed and sold ultrasonics cleaning equipment.

**ANSWER:**  UPC Illinois denies the allegations of this paragraph.

7.    In the 1960's, Crest commenced the manufacturing, marketing and selling of ultrasonics cleaning products that utilized the Vibra-Bar transducer system.  The Vibra-Bar design consists of two transducer stacks which permit simultaneous multiple frequencies within an ultrasonics cleaning system.

**ANSWER:**  UPC Illinois admits that at various time periods, Crest has manufactured, marketed or sold ultrasonic cleaning product systems or components that in some instances contained a transducer system that in some instances Crest manufactured.  UPC Illinois denies the remaining allegations of this paragraph.

8.    Since the 1960's to the present, Crest has continuously identified its ultrasonics systems that utilize the Vibra-Bar transducer system with the terms "Vibra-Bar" and has included the term "simultaneous multi-frequency" in its marketing and sales materials to describe the features of those products.

**ANSWER:**   UPC Illinois denies the allegations of this paragraph.

9.      In 1972, Edward Cook left Crest and founded UPC.

**ANSWER:**   UPC Illinois admits that Cook founded UPC New Jersey in or around 1972 or 1973, but denies the remaining allegations of this paragraph.

10.      Like Crest, UPC manufactured, marketed and sold ultrasonic cleaning equipment.

**ANSWER:**   UPC Illinois admits that at various times, Crest has manufactured, marketed or sold components of ultrasonic cleaning equipment system, but denies the remaining allegations of this paragraph.

11.      In addition to Edward Cook, UPC's workforce consisted of numerous employees that were formerly employed by Crest.

**ANSWER:**   UPC Illinois lacks information and knowledge sufficient to form a belief as to the truth of these allegations as to UPC New Jersey, and therefore denies the same.  As for UPC Illinois, it denies the allegations of this paragraph.

12.      For several years during the 1970's and 1980's, UPC operated its business in an office building located in Trenton, New Jersey.

**ANSWER:**   Upon information and belief, UPC Illinois admits that for some period from 1973 to 1984, UPC New Jersey operated its business in an office and production facility in Trenton, New Jersey.  As for UPC Illinois, UPC Illinois denies the allegations of this paragraph.

13.    This office building was rented and partially occupied by Crest. Crest sub-leased some of its office space to UPC.

**ANSWER:**  UPC Illinois admits, upon information and belief, UPC New Jersey and Crest occupied some office and manufacturing space in the building, but lacks information sufficient to form a belief as to the remaining allegations and therefore denies the same.

14.    Because UPC's workforce consisted of numerous employees formerly employed by Crest, including Crest's founder Edward Cook, and because UPC was a competitor of Crest that sub-leased office and manufacturing space from Crest, UPC knew or should have known that Crest had identified its ultrasonics cleaning systems that utilize the Vibra-Bar transducer system with the terms "Vibra-Bar" and had included the term "simultaneous multi-frequency" in its marketing and sales materials to describe the features of those products since the 1960's.

**ANSWER:**  UPC Illinois denies the allegations of this paragraph.

15.    In fact, Edward Cook worked to develop the Vibra-Bar transducer system and its simultaneous multi-frequency features when he was employed by Crest.

**ANSWER:**  UPC Illinois admits that Cook worked on a transducer system before and while he was employed by Crest, but denies the remaining allegations of this paragraph.

16.    Nevertheless, UPC filed an application to register Vibra-Bar in 1984. A true and correct copy of the Application (Ser. No. 73/506,519) (hereinafter the "VIBRA-BAR Application") is attached hereto as Exhibit A.

**ANSWER:**  UPC Illinois admits that it filed an application (Ser. No. 73/506,519) in 1984 to register VIBRA-BAR, admits that Crest attached the application to its Counterclaim, but denies all remaining allegations contained in this paragraph.

17.    The VIBRA-BAR Application, which was signed by UPC's then President, Robert F. Schnoes, falsely represents to the United States Patent and Trademark Office that UPC is the owner of the mark sought to be registered, and that:

> to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake or to deceive; that all statements made herein of his own knowledge are true and that statements made on information and belief are believed to be true; and further that these statements are made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment . . . and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

(Exhibit A, Page 10.)

**ANSWER:**  UPC Illinois admits that Robert Schnoes was the president of UPC Illinois at the time the application was filed and that the application contains the text cited above, but denies the remaining allegations of this paragraph.

18.    Further, during the application process, UPC's attorney and agent, Frederick A. Zoda, who was authorized to file and prosecute the VIBRA-BAR Application, falsely represented to an Examining Attorney for the United States Patent and Trademark Office that VIBRA-BAR "has no meaning in the trade." This fact is set forth in the United States Patent and Trademark Office's Examiner's Amendment, dated February 5, 1985.  A true and correct copy of the Examiner's Report (hereinafter the "Examiner's Amendment") is attached hereto as Exhibit B.  This representation by Zoda was inaccurate because VIBRA-BAR did have "meaning in the trade," it had a clear meaning as to Crest and its ultrasonics cleaning systems that utilize the Vibra-Bar transducer system.

**ANSWER:**    UPC Illinois admits that Crest has attached a true and correct copy of the Examiner's Report as Exhibit B.  UPC Illinois further admits that Zoda was authorized to file and prosecute the VIBRA-BAR Application.  UPC Illinois lacks knowledge and information as to what Zoda said to the United States Patent and Trademark Office regarding any usage of the term "Vibra-Bar" in the trade.  UPC Illinois denies the remaining allegations of this paragraph.

19.    Subsequent to the VIBRA-BAR Application, UPC filed an application to register SIMULTANEOUS-MULTI-FREQUENCY on March 18, 2004.  A true and correct copy of the Application (Ser. No. 78/386,756) (hereinafter the "SIMULTANEOUS MULTI-FREQUENCY Application") is attached hereto as Exhibit C.

**ANSWER:**   UPC Illinois admits.

20.     The SIMULTANEOUS MULTI-FREQUENCY Application, which was signed by UPC's attorney, Jeffrey J. Makeever, falsely represented to the United States Patent and Trademark Office that:

> he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, . . . he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce . . .; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

(Exhibit C, Page 3.)  This statement is false because SIMULTANEOUS MULTI-FREQUENCY had been associated with Crest's ultrasonics cleaning systems that utilize the Vibra-Bar transducer system since the 1960's, and UPC knew or should have known of Crest's prior use.

**ANSWER:**   UPC Illinois admits that its application for Simultaneous Multi-Frequency contains the cited language.  UPC Illinois denies the remaining allegations contained in this paragraph.

21.     In response to the SIMULTANEOUS MULTI-FREQUENCY Application, the United States Patent and Trademark Office issued an Office Action refusing to register SIMULTANEOUS MULTI-FREQUENCY on September 29, 2004, because SIMULTANEOUS MULTI-FREQUENCY is "merely descriptive under the Trademark Act."  A true and correct copy of the United States Patent and Trademark Office's refusal of the SIMULTANEOUS

MULTI-FREQUENCY Application (hereinafter the "Office Action Refusal") is attached hereto as Exhibit D.

**ANSWER:**   UPC Illinois admits that on September 29, 2004, the United States Patent and Trademark Office issued an Office Action refusing to register Simultaneous Multi-Frequency and admits that the Office Action included the language "the mark Simultaneous Multi-Frequency is merely descriptive of ultrasonic cleaning systems and for transducers which produce ultrasonic waves at multiple frequencies at the same time." UPC Illinois further admits that Crest attached a true and correct copy of this Office Action as Exhibit D. UPC Illinois denies all remaining allegations contained in this paragraph.

22.    On March 24, 2005, in response to the Office Action Refusal, UPC's attorney, Jeffrey J. Makeever, submitted an amendment requesting that the United States Patent and Trademark Office withdraw its refusal to register, arguing that SIMULTANEOUS MULTI-FREQUENCY is not merely descriptive. A true and correct copy of the amendment (hereinafter the "Amendment to the SIMULTANEOUS MULTI-FREQUENCY Application") is attached hereto as Exhibit E. Moreover, in the Amendment to the SIMULTANEOUS MULTI-FREQUENCY Application, Makeever asserted that SIMULTANEOUS MULTI-FREQUENCY should be registered because it has acquired distinctiveness. (Exhibit E, Page 3.) Makeever's assertion that SIMULTANEOUS MULTI-FREQUENCY had acquired distinctiveness with respect to UPC's products is inaccurate given the fact that Crest had used the very same language (i.e.,

"simultaneous multi-frequency") in its marketing and sales materials for ultrasonics cleaning systems that utilize the Vibra-Bar transducer system long prior to UPC's trademark application.

**ANSWER:**   UPC Illinois admits that its agent filed an amendment requesting the United States Patent and Trademark Office reconsider its Simultaneous Multi-Frequency decision and that UPC asserted distinctiveness as a basis for registration.  UPC Illinois further admits that Crest attached a true and correct copy of this correspondence as Exhibit E.  UPC Illinois denies the remaining allegations contained in this paragraph.

23.    Further, in response to the SIMULTANEOUS MULTI-FREQUENCY Application, the United States Patent and Trademark Office, on October 1, 2004, issued an Office Action demanding that UPC submit either an affidavit or a declaration verifying the dates of first use of SIMULTANEOUS MULTI-FREQUENCY by UPC in commerce.  A true and correct copy of the United States Patent and Trademark Office's Office Action demanding verification (hereinafter the "Office Action Demanding Verification") is attached hereto as Exhibit F.

**ANSWER:**   UPC Illinois admits the United States Patent and Trademark Office issued an Office Action on October 1, 2004, that that Office Action sought confirmation of date of first use and that Crest attached a copy of the Office Action as Exhibit F.  UPC Illinois denies the remaining allegations contained in this paragraph.

24.    On March 23, 2005, in response to the Office Action demanding verification, Steven R. Klinger, the President of UPC, submitted a declaration stating that:

> Ultrasonic Power Corporation has been using the mark SIMULTANEOUS MULTI-FREQUENCY through substantially exclusive and continuous use in commerce on or in connection with Ultrasonic Cleaning Systems since October 15, 1982, more than five (5) years from the date of this declaration. Accordingly, the mark has become distinctive of [UPC's] ultrasonic cleaning systems.
>
> * * *
>
> I declare further that all statements made herein of my own knowledge are true; that all statements made herein on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment. . . .

*See* Exhibit E, pp. 5-6. Klinger's assertion that SIMULTANEOUS MULTI-FREQUENCY had acquired distinctiveness with respect to the UPC's ultrasonic cleaning systems is false because Crest had used the very same language ( i.e., "simultaneous multi-frequency") in its marketing and sales materials for ultrasonics cleaning systems that utilize Vibra-Bar transducer system long prior to UPC's trademark application long prior to UPC's trademark application.

**ANSWER:** UPC Illinois admits that Mr. Klinger submitted a declaration on or around March 23, 2005, that contains the quoted language, and that Mr. Klinger was then the president of UPC Illinois.. UPC Illinois denies the remaining allegations contained in this paragraph.

25.    Finally, on August 14, 2007, SIMULTANEOUS MULTI-FREQUENCY was registered by the United States Patent and Trademark Office.

**ANSWER:**   UPC Illinois admits the United States Patent and Trademark Office registered SIMULTANEOUS MULTI-FREQUENCY on or about August 17, 2007.  UPC Illinois denies the remaining allegations contained in this paragraph.

26.    As a result of both Parties' prior dealings and business relationship, when the VIBRA-BAR and SIMULTANEOUS MULTI-FREQUENCY applications were filed, UPC and its agent(s) knew or should have known that Crest had identified its ultrasonics cleaning systems that utilize the Vibra-Bar transducer system with the terms "Vibra-Bar" and had included the term "simultaneous multi-frequency" in its marketing and sales materials to describe the features of those products.

**ANSWER:**   UPC Illinois denies the allegations contained in this paragraph.

### COUNT I

27.    Crest hereby incorporates by reference the above paragraphs as though fully set forth herein.

**ANSWER:**   UPC Illinois incorporates by reference it answers to the above paragraphs as though fully set forth herein.

28.    UPC's conduct before and representations to United States Patent and Trademark Office constitute fraud on the United States Patent and Trademark

Office with respect to Registration No. 1,347,440 registered July 9, 1985, for

VIBRA-BAR.  As a result of Plaintiff perpetrating this fraud on the United States

Patent and Trademark Office, the Registration No. 1,347,440, registered July 9,

1985 for VIBRA-BAR, should be canceled under 15 U.S.C. § 1064(3).  Further,

pursuant to 15 U.S.C. § 1119, this Court should certify to the Director of the

United States Patent and Trademark Office that Registration No. 1,347,400,

registered July 9, 1985 for VIBRA-BAR, be permanently removed from the

records of the United States Patent and Trademark Office.

**ANSWER:**   UPC Illinois denies the allegations contained in this

paragraph.

## COUNT II

29.     Crest hereby incorporates by reference the above paragraphs as

though fully set forth herein.

**ANSWER:**   UPC Illinois incorporates by reference it answers to the above

paragraphs as though fully set forth herein.

30.     The aforementioned conduct alleged with particularity above

constitutes fraud on the United States Patent and Trademark Office with respect to

Registration No. 3,279,300, registered August 14, 2007, for SIMULTANEOUS

MULTI-FREQUENCY.  As a result of Plaintiff perpetrating this fraud on the

United States Patent and Trademark Office, the Registration No. 3,279,300,

registered August 14, 2007 for SIMULTANEOUS MULTI-FREQUENCY, should

be canceled under 15 U.S.C. § 1064(3).  Further, pursuant to 15 U.S.C. § 1119,

this Court should certify to the Director of the United States Patent and Trademark
Office that Registration No. 3,279,300, registered July 9, 1985 for
SIMULTANEOUS MULTI-FREQUENCY, be permanently removed from the
records of the United States Patent and Trademark Office.

**ANSWER:**   UPC Illinois denies the allegations contained in this
paragraph.

## COUNT III

31.    Crest hereby incorporates by reference the above paragraphs as
though fully set forth herein.

**ANSWER:**   UPC Illinois incorporates by reference it answers to the above
paragraphs as though fully set forth herein.

32.    With respect to Plaintiff's United States Trademark Registration
No. 3,279,300, registered August 14, 2007, for SIMULTANEOUS MULTI-
FREQUENCY, said registration should be canceled pursuant to 15 U.S.C.
§ 1064(3) because the registered mark is merely descriptive.  Because the
registered mark is descriptive, this Court should certify, pursuant to 15 U.S.C.
§ 1119, to the Director of the United States Patent and Trademark Office, that
Registration No. 3,279,300, registered August 14, 2007 for SIMULTANEOUS
MULTI-FREQUENCY, be permanently removed from the records of the United
States Patent and Trademark Office.

**ANSWER:**   UPC Illinois denies the allegations contained in this
paragraph.

14

33.     Crest is further entitled to a declaration that: Plaintiff does not possess any trademark rights to which it claims rights of ownership; that "SIMULTANEOUS MULTI-FREQUENCY" is merely descriptive, incapable of acquiring trademark significance, and/or in the public domain; and that Crest has not infringed by Plaintiff trademark rights asserted by Plaintiff in its Amended Complaint.

**ANSWER:**   UPC Illinois denies the allegations contained in this paragraph.

### AFFIRMATIVE DEFENSES

1.     UPC Illinois owns all right, title, and interest in and to the marks "Vibra-Bar" and "Simultaneous Multi-Frequency."

2.     Crest's counterclaims are barred by the doctrine of unclean hands.

3.     Crest's counterclaims are barred by the doctrine of laches.

4.     At any time where Crest sold products that included components sold or otherwise provided to Crest by UPC New Jersey or UPC Illinois, any use of the marks "Vibra-Bar" and "Simultaneous Multi-Frequency" -- and any trademark rights derived therefrom --- inured to the benefit of UPC.

WHEREFORE, UPC Illinois  respectfully requests that the Court:

A.     Grant UPC Illinois all the relief it seeks in its Complaint; and

B.     Dismiss Crest's Counterclaim and deny the relief it seeks.

Dated this 12th day of May, 2008.

/s/ Amy L. Lindner
David G. Hanson
Amy L. Lindner
Attorneys for Plaintiff
Ultrasonic Power Corporation
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 2100
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097
alindner@reinhartlaw.com

REINHART\2309142