UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

ULTRASONIC POWER
CORPORATION,

                      Plaintiff,

             v.                                    Case No. 07-C-50220

CREST ULTRASONICS CORP.,

                      Defendant,
       and

CREST ULTRASONICS CORP.,

                      Counter-Plaintiff,
            v.

ULTRASONIC POWER
CORPORATION,

                      Counter-Defendant.

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a).**

## INTRODUCTION

Defendant here attempts to shift the burden of litigating in a foreign forum to Plaintiff. As shown below, that attempt is inappropriate. The Court should deny this motion.

On November 6, 2007, Plaintiff Ultrasonic Power Corporation ("UPC Illinois") filed suit against Defendant Crest Ultrasonics Corp. ("Crest"), asserting claims for trademark infringement, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act, and common law trademark infringement. (Pl.'s Compl. at ¶¶ 8-32.) UPC Illinois filed an amended complaint on February 11, 2008. On April 18,

2008, Crest filed a motion to transfer venue to the District of New Jersey. Crest cannot meet its substantial burden of demonstrating New Jersey is a "clearly more convenient" forum to adjudicate the merits of this action. Further, this Court's interest in protecting the intellectual property rights of one of its citizens is strong, and the interests of justice demand this case remain in this forum. Therefore, Crest's motion must fail.

## ARGUMENT

### The 1404(a) Standard

Under 28 U.S.C. § 1404(a), transfer may be granted "where the moving party demonstrates that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) (citation omitted).[1] While the transfer decision is discretionary, the moving party must sustain a heavy burden to prevail. *See, e.g., Magnavox Co. v. Bally Mfg. Corp.*, 414 F. Supp. 891, 892 (N.D. Ill. 1976)

### The Moving Party Must Show Transfer is "Clearly More Convenient"

A motion to transfer cannot succeed if the competing districts are equally convenient, or even if the competing district would be slightly to moderately more convenient. In fact, a motion to transfer must fail unless the movant can demonstrate the transferee district is "clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220 (7th Cir. 1986). This burden is heavy, and unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should "rarely be disturbed." *Magnavox*, 414 F. Supp. at 892.

---

[1] Crest has conceded that this Court has jurisdiction and venue is proper here. (Def.'s Br. at 5-6.)

2

Further, to demonstrate an alternate venue is "clearly more convenient" the moving party must prove transfer will not "merely transform an inconvenience for one party into an inconvenience for another party." *Coolsavings.com, Inc. v. IQ.Commerce Corp.,* 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999) (citation omitted); *see also Vandeveld,* 877 F. Supp. at 1167. Here, Crest merely seeks to transfer inconveniences among the parties. Crest cannot show transfer of the action to New Jersey is "clearly more convenient." Thus, Crest's motion must be denied.

## I.   TRANSFER IN THE INTERESTS OF THE PARTIES AND WITNESSES IS NOT CLEARLY MORE CONVENIENT.

In assessing the convenience of the parties and witnesses, courts consider: the plaintiff's choice of forum, the situs of material events, ease of access to sources of proof in each forum, and convenience to the parties and witnesses. *Coolsavings.com,* 53 F. Supp. 2d at 1005-1006. These factors, show that Crest's motion to transfer must be denied.

### A.   UPC Illinois's Choice of Forum is Entitled to Great Deference.

UPC is an Illinois corporation with its principal place of business located at 239 E. Stephenson Street, Freeport, Illinois 61032**.** (Am. Compl. at ¶ 1.) The Seventh Circuit, like others, holds "a plaintiff's choice of forum should rarely be disturbed . . . ." *Vandeveld,* 877 F. Supp. at 1167. In fact, a plaintiff's choice of forum, is "afforded substantial deference, particularly when it is the plaintiff's home forum." *Aero Prod. Int'l Inc. v. Intex Corp.,* 2002 WL 31109386, *10 (N.D. Ill. Sept. 20, 2002); *see also Northwestern Corp. v. Gabriel Mfg. Co.,* 1996 WL 73622, *5 (N.D. Ill. Feb. 16, 1996); *Vandeveld,* 877 F. Supp. at 1167. This Court is UPC's home forum. Thus, this factor weighs heavily against transfer.

Crest attempts to diminish the proper weight accorded UPC Illinois's choice of forum by arguing "the central activities giving rise to the causes of action occurred in New Jersey, not Illinois." (Def.'s Br. at 7.) This is inaccurate.

The connection between this forum and UPC Illinois's claims is strong. As an Illinois company, UPC inarguably suffered injury within this state. *Estwing Mfg. Co. v. Cal-Rainbow Prod., Inc.,* 2001 WL 664396, *1 (N.D. Ill. June 11, 2001). Crest, according to its website, maintains a sales office in Illinois[2] and admits to selling products advertised with the infringing marks within Illinois. (Def.'s Br. at 5). Moreover, residents from Illinois likely viewed Crest's improper use of UPC's trademarks on the Internet and e-mailed orders for Crest products from Illinois – thus creating "a likelihood of confusion among consumers in this District." (Am. Compl. at ¶ 6; Def.'s Br. at 5); *Id.*; *see also Northwestern,* 1996 WL 73622 at *5 (citation omitted) (holding "a 'substantial part' of the events triggering trademark infringement may occur both in the district where the infringer is located and where the trademark owner is located and confusion is likely to occur."); *Q Sales & Leasing, LLC v. Quilt Prot., Inc.,* 2002 WL 1732418, *2 (N.D. Ill. July 26, 2002) (citation omitted) (holding "[t]he fact that a plaintiff's alleged injury occurred in its home forum in a trademark case can establish a substantial connection to that forum."); *CoolSavings.com,* 53 F. Supp. 2d at 1005 (finding a defendant's act of hiring Chicago-based marketing firm to market infringing product, similar to Crest's maintenance of a sales office in Illinois, created a significant connection between the claim and the plaintiff's choice of forum).

---

[2] Crest's website, as of the date of this filing, lists a sales office with a (630) area code. *See* http://www.crest-ultrasonics.com/global_support.htm and Declaration of Amy L. Lindner at ¶ 2.

Further, Crest claims that the Northern District of Illinois does not hesitate to transfer trademark cases. (Def.'s Br. at 7.) This is not true. In fact, the Northern District of Illinois routinely refuses to transfer venue in trademark cases. *See e.g. Nissan Motor Co. v. BMW,* 2002 WL 31426654 (N.D. Ill. Oct. 28, 2002) (refusing to transfer trademark case to New Jersey because Nissan asserted claims under the Illinois Unfair Trade Practices Act); *Q Sales,* 2002 WL 1732318 (denying transfer of trademark case due to plaintiff's home state forum and because plaintiff asserted violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act); *Estwing,* 2001 WL 664396 (denying transfer of venue where plaintiff brought suit in home forum); *Northwestern,* 1996 WL 73622 (denying transfer of venue where plaintiff brought suit in home forum and also asserted claims under the Illinois Uniform Deceptive Trade Practices Act); *see also Floralife, Inc. v. Floraline Int'l, Inc.,* 633 F. Supp. 108 (N.D. Ill. 1985)(denying transfer in trademark case); *Chicago Reader, Inc., v. Metro College Pub., Inc.,* 495 F. Supp. 441 (N.D. Ill. 1980)(denying transfer in trademark case).

Finally, this Court can easily distinguish the few cases Crest cites in which transfer was granted. (Def.'s Br. at 7.) In *Wen Products,* transfer was granted primarily because one of the defendant's witnesses was of advanced age, had a heart condition, and was unfit for travel, and because the parties differed greatly in size. *Wen Products, Inc. v. Master Leather, Inc.,* 899 F. Supp. 384, 386 (N.D. Ill. 1995) (noting defendant's company had two employees while plaintiff employed 225). In *Truck & Engine Corp.*, transfer was granted as almost all of the improper use of the mark occurred in California and because California law would apply. *Truck & Engine Corp., v. Dow-Hammond Trucks Co.,* 221 F. Supp. 2d 898 (N.D. Ill. 2002.) Finally, in *SRAM,* the court granted transfer largely because the

defendant was a small corporation employing only five employees whereas the Plaintiff was an international company with over five hundred employees. *SRAM Corp., v. SunRace Roots Ent. Co.,* 953 F. Supp. 257, 259 (N.D. Ill. 1997).

### B.     The Situs of Material Events Does Not Favor Transfer.

Next Crest argues that the situs of material events occurred exclusively in New Jersey because that is where Crest (*i.e.* the accused infringer) is headquartered.[3] (Def.'s Br. at 7-8.)  However:

> [c]ontrary to defendants' assertions, the location of the infringer is not the only relevant factor.  Rather, a 'substantial part' of the events triggering trademark infringement may occur both in the district where the infringer is located and where the trademark owner is located and confusion is likely to occur.

*Northwestern,* 1996 WL 73622 at *5.

As mentioned above, the alleged acts of infringement in this case occurred across the entire country through Crest's improper use of UPC's trademarks on its webpage. (Am. Compl. at ¶ 6.)  It is almost certain that Crest's website was accessed by individuals and corporations residing in Illinois, orders were e-mailed to Crest by Illinois residents, and Crest admits that it has made sales in Illinois. (Def.'s Br. at 5; Pl.'s Am. Compl. at ¶ 6.) Further, Crest maintains a sales office in Illinois, and advertising materials distributed out of that office likely contained improper usage of UPC's protected marks. (Am. Compl. at ¶ 6.)  Thus, UPC suffered economic injury in Illinois through the improper acts of Crest, and Crest's actions likely caused confusion "among consumers in this District." *Estwing,* 2001 WL 6644396 at *1.  This Court's connection to the material events is significant.

---

[3] Crest also alleges UPC's committed fraud in New Jersey.  (Def.'s Br, at 8.)  UPC expressly denies all allegations of wrongdoing made by Crest, be it fraud or otherwise.

6

Crest next argues that because all of the material events occurred in New Jersey, the case must be transferred. (Def.'s Br. at 8.) Crest is incorrect. A finding that the situs of material events favors the movant does not establish a presumptive right to transfer. For example, in *CoolSavings.Com,* the court found the situs of the patent infringement to be California. However, because "Illinois has a strong interest in adjudicating injuries to its citizens' intellectual property rights" the court denied the transfer. Again, the case cited by Crest, *Int'l Truck,* is distinguishable as almost all of the improper use of the mark occurred in California, and as California law would apply. *Int'l Truck,* 221 F. Supp. 2d at 904-06. In this case, improper use of the mark occurred in Illinois and the non-federal claims are governed by Illinois law.

Given that UPC Illinois suffered injury within its home district, the situs of material events is at most neutral, if not weighted against transfer.

**C.    Ease of Access to Sources of Proof Does Not Favor Transfer.**

Crest next argues that most of the relevant documents are located in New Jersey and therefore "this factor strongly favors transfer." (Def.'s Br. at 8.) This argument fails.

First, "[d]ocuments and records are usually not a very persuasive reason to transfer a case." *Photogen, Inc. v. Wolf,* 2001 WL 477226, *5 (N.D. Ill. May 7, 2001). It is firmly established that "modern technology has made it easier and cheaper to transfer information than ever before." *CoolSavings.Com,* 53 F. Supp. 2d at 1006; *see also Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir. 2000)(same). Thus, inconvenience based on the transport of documents is not a very compelling argument for transfer. This is especially true as "no matter where the trial is held" all relevant documents "will have to be collected, copied, and sent to the offices of trial counsel . . . ." *Coolsavings.com Inc.,* 53 F. Supp. 2d at 1006.

7

Second, more than one party has documents and witnesses involved in this case. UPC is headquartered in Illinois. At its Illinois headquarters, UPC maintains documents and other evidence pertinent to this case. (Decl. of Robert F. Schnoes "Schnoes Dec." at ¶ 2.) Further, UPC Illinois's employees with relevant knowledge are located in Illinois. (Schnoes Dec. at ¶ 3.) Therefore, to transfer the case to New Jersey would merely shift inconvenience from Crest to UPC Illinois. This the court cannot do.[4] *CoolSavings*.com, 53 F. Supp. 2d at 1006.

### D.   The Convenience of the Non-Party Witnesses Does Not Favor Transfer.

Crest devotes a large portion of its brief arguing inconvenience to non-party witnesses located in New Jersey—and the inability of this Court to secure compulsory process over these persons—necessitates transfer. (Def.'s Br. at 8-13.) Crest's argument is vague and conclusory—and therefore must fail.

#### 1.   Crest Offers Only Vague Generalizations Regarding the Existence and Location of Non-Party Witnesses.

In alleging that the inconvenience to non-party witnesses outside the subpoena power of the court favors transfer, the moving party must go "beyond vague generalizations," for this factor to bear any weight. *Heller Fin. Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989). In fact, "[t]he party seeking transfer must clearly specify the key witnesses to be called and make a general statement of their testimony." *Vandeveld,* 877 F. Supp at 1167-68 (citing *Heller Fin.,* 883 F.2d at 1293). The moving party cannot prevail by merely making reference to the existence of

---

[4] Further, Crest's argument as to the access to evidence is not supported by affidavit or other relevant documentation. Therefore, it must fail. *Int'l Molding Machine Co.,* 2002 WL 1838130, *7 (N.D. Ill. Aug. 12, 2002) ("In connection with motions to transfer, however, courts should only consider undisputed facts supported by affidavits, depositions, stipulations or other relevant documents.")

8

"numerous non-party witnesses, including officers and employees . . ." *Avesta Sheffield Inc. v. Olympic Cont'l Res., LLC,* 2000 WL 198462, *6 (N.D. Ill. Feb. 14, 2000).

Therefore, Crest's vague and general averments regarding the presence of "numerous former UPC employees" including "seven to eight of whom previously worked for Crest" outside the subpoena power of this court must be disregarded. (Def.'s Br. at 9.)

### 2. The Presence of Non-Party Witnesses Outside the Subpoena Power of this Court Does Not Favor Transfer.

Crest does identify Zoda, former counsel to UPC, and three former employees, William Cane, Donnie Steaver, and Maryann Wylie as potential non-party witnesses. (Def.'s Br. at 9-10.) The presence of these four parties outside the subpoena power of this court does not favor, let alone require, transfer of this action.

First, Crest's naming Attorney Zoda is vague and does not meet the specificity requirements. *Heller,* 883 F.2d at 1293. Crest provides no general statement of Attorney Zoda's potential testimony other than the fact that he will "possess key documents and testimony relating to UPC's application." (Def.'s Br. at 10.) The existence of documents in the hands of UPC's former counsel is a non-factor. If UPC's former counsel has discoverable, non-privileged documents pertaining to this litigation, there is nothing to stop Crest from obtaining the documents by issuing a subpoena duces tecum. (*see* Fed. R. Civ. P. 45(a)(1)(A)(iii)). As shown above, the location of "[d]ocuments and records are usually not a very persuasive reason to transfer a case." *Photogen,* 2001 WL 477226 at *5. Moreover, Crest's ability to elicit testimony from UPC's former counsel is questionable given attorney-client privilege. (*See* Schnoes Dec. at ¶ 4.)

Second, Crest alleges in cursory fashion that because the non-party witnesses "are not under Crest's control, it is unlikely that Crest would be able to secure their voluntary

9

appearance at trial." (Def.'s Br. at 10.) This is not sufficient. Crest must show the non-party witnesses would be *unwilling* to appear in the Northern District of Illinois for this factor to weigh even slightly in Crest's favor:

> When analyzing the convenience of the parties and witnesses, a defendant must show that witnesses would be unwilling to testify in the [district] . . . . Otherwise, it is assumed that the witnesses will voluntarily appear, and mere inconvenience to the witnesses alone is not enough to warrant transfer.

*FC Inv. Group LC v. Lichtenstein,* 441 F. Supp. 2d 3, 14 (D.D.C. 2006); *see also Houk v. Kimberly-Clark Corp.,* 613 F. Supp. 923, 931 (W.D. Mo. 1985)(finding presence of non-party witnesses outside the subpoena power of the court "not controlling where, as in the present case, the defendant's argument merely assumes that the witnesses in question would not appear voluntarily . . . ."); *Avesta Sheffield,* 2000 WL 198462 at *6 (finding party should state whether non-party witnesses would refuse to testify voluntarily).

Crest fails to show, let alone with sufficient detail, that non-party witnesses would be unwilling to testify at trial. So, too, fails its argument.

### 3. Non-Party Witnesses Would Not be Significantly Hindered by this Court Retaining Jurisdiction.

Crest cannot credibly argue that potential non-party witnesses would be greatly inconvenienced by adjudication in Illinois. Crest acknowledges it will pay the expenses of any non-party witnesses Crest may rely on at trial. (Def.'s Br. at 11) ("If the court transfers this case to New Jersey, *Crest* would incur minimal travel costs for the aforementioned witnesses [the non-party witnesses] . . . .") (emphasis added); (s*ee also* Def.'s Br. at 13) ("*Crest will incur* the significantly greater cost of flying numerous non-party witnesses from New Jersey to Illinois and back, *and providing them* with hotel accommodations, if the case proceeds in Illinois.) (emphasis added).

10

As established, "[e]asy air transportation, the rapid transmission of documents . . . make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas." *Bd. of Tr., Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir. 2000).  Moreover, even if this case were transferred, these non-party witnesses would nonetheless be taken from their day-to-day activities. *See e.g. Cont'l Airlines, Inc. v. Am. Airlines, Inc.,* 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (while witnesses may be absent "somewhat longer" if the trial is held in a distant forum their inconvenience "will not be increased a great deal," they will "necessarily be away from their duties while they are testifying no matter where the trial is held.")

Therefore, the inconvenience to non-party witnesses will be minimal at best, and should be given little weight in considering transfer.  The effect of potential witnesses residing outside the subpoena power of this Court is further minimized by Crest's failure to adequately disclose their identity, substance of their testimony, and by Crest's failure to prove their voluntary appearance cannot be secured at trial.

### E.     The Convenience of the Parties Does Not Warrant Transfer.

The remainder of Crest's argument boils down to who will have to pay more to fly witnesses to either jurisdiction.  This argument is one that "merely transforms an inconvenience for one party into an inconvenience for another party," and therefore fails. *CoolSavings.com,* 53 F. Supp. 2d at 1006; (Def.'s Br. at 12-13.)

Crest has not claimed it is smaller than UPC Illinois or that it is less able than UPC Illinois to pay the costs of litigating in a distant forum.  (Def.'s Br. at 12-13.)[5]  However,

---

[5] Indeed, from the assertions on Crest's website that its annual sales "exceed $100 million a year," Crest is several times larger than UPC Illinois.  (*See* Schnoes Dec. at ¶ 5).

11

Crest attempts to argue that venue should be transferred as the costs of attendance for non-party witnesses in New Jersey would be lower. But, as discussed above, Crest admits they will pay costs for these non-party witnesses to attend trial. Therefore, this is merely a litigation cost to Crest to be balanced against UPC's costs if the litigation was transferred.

Similarly, if the case is transferred, UPC would incur the costs of flying both counsel and its own witnesses, non-party or otherwise, to New Jersey for trial. Therefore, transfer for the convenience of the parties is not warranted as it would merely shift inconveniences among the parties. *CoolSavings.com,* 53 F. Supp. 2d at 1006 ("While we understand that it will be inconvenient for IQ to defend against this lawsuit in Chicago, it would be equally inconvenient for *CoolSavings* to litigate in California, and we will not transfer this case . . . .")[6]

## II.　THE PUBLIC INTEREST DOES NOT FAVOR TRANSFER.

The final consideration is the public interest. *Coolsavings.com,* 53 F. Supp. 2d at 1006-1007. This includes an inquiry into the interests of the forum state in resolving the conflict, the familiarity of the court with local law, and interests of judicial efficiency. *Id.; Vandeveld,* 877 F. Supp at 1169. The public interest weighs strongly against transfer.

### A.　Illinois' Interest in Protecting the Intellectual Property Rights of Its Corporate Citizens is Strong.

Crest does not even attempt to argue that Illinois' interest in resolving this action is weak. The public interest strongly favors resolving this case in Illinois. It is firmly established that "Illinois has a strong interest in adjudicating injuries to its citizens'

---

[6] Crest's inconvenience argument is further weakened by the fact Crest made sales within Illinois, advertise their products in Illinois, and maintain a sales office in Illinois. *See e.g. Chicago Reader Inc. v. Metro College Pub., Inc.,* 495 F. Supp. 441, 444 (N.D. Ill. 1980) ("Metro has allegedly profited from a substantial, ongoing relationship with Illinois. Therefore, it is fair and reasonable to require it to defend here.")

intellectual property rights." *CoolSavings.com,* 53 F. Supp. 2d at 1006-1007; *see also Northwestern Corp.* 1996 WL 73622, *6 ("Here, the overall interests of justice militate against transfer . . . . This action concerns the alleged infringement of a trademark owned by a plaintiff domiciled and doing business in this forum."); *Q Sales,* 2002 WL 1732418 at *4 (same). Likewise, "[e]qually important policies are expressed in the Illinois laws of unfair competition." *Floralife,* 633 F. Supp. at 116. Illinois's interest in this action is yet further strengthened by the fact UPC Illinois suffered injury in this forum. Therefore, this factor alone provides sufficient grounds to deny transfer.

      **B.**     **Illinois Law Applies to UPC Illinois's State Law Claims.**

In addition to federal claims, UPC Illinois asserts causes of action under Illinois law, including violation of the Illinois Uniform Deceptive Trade Practices Act, and common law trademark infringement. (Am. Compl. at ¶¶ 50-58.) The applicability of Illinois law strongly weighs against transfer as the Northern District of Illinois is obviously more familiar with Illinois law than the District of New Jersey. *Nissan,* 2002 WL 31426654; *Northwestern,* 1996 WL 73622 at *6; *Q Sales,* 2002 WL 1732418 at *4.

Crest argues that it is too early to determine whether Illinois law will apply, but does not provide any analysis supporting this position. (Def.'s Br. at 14.) Crest's argument is flawed.

In fact, in trademark cases in the Northern District of Illinois where the plaintiff also asserts a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act or similar statute, along with common law claims, courts find this to be the *most compelling factor* in denying a motion for transfer. For example, the *Nissan* court found:

> Most compelling, in this case, is the 'interest of justice' component of § 1404(a) . . . . Nissan has asserted pendent state law claims, arising under Illinois common law and under the Illinois Unfair Trade Practices

13

>Act.  Because Illinois law will be relevant in the resolution of the dispute, the court finds that the interest of justice are best served by denying Defendants' motion to transfer [to] the District of New Jersey.

*Nissan,* 2002 WL 31426654 at *3.

Similarly, in *Q Sales,* the court found the plaintiff's alleged violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act "weighs heavily in favor of denying the motion to transfer."  *Q Sales,* 2002 WL 1732418 at *4; *see also Northwestern,* 1996 WL 72622 at *6 (same.)  Therefore, this factor weighs heavily against transfer.

### C. Judicial Efficiency Favors Adjudication in Illinois.

Interests of judicial efficiency also militates against transfer.  While Crest only cites to the median time from filing to disposition, (7.6 months in New Jersey and 6.2 months in the Northern District of Illinois) courts also examine the median number of months from filing to trial.  *Vandeveld,* 877 F. Supp. at 1169.  In the Northern District of Illinois the median time from filing to trial is 29.7 months.  In New Jersey it is 36 months.[7]  It is likely that a case in the Northern District of Illinois will proceed to trial over half a year sooner.  Thus, this factor also weighs against transfer.

All three factors that contemplate the interests of justice weigh squarely against transfer.  As the "'interests of justice' is a separate component of a transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result," this in itself is sufficient reason to deny Crest's motion to transfer venue.  *Coffey,* 796 F.2d at 220 (internal citations omitted).

---

[7] These statistics are available at http://www.uscourts.gov/cgi-bin/cmsd2007.pl, as of May 8, 2008.

## **CONCLUSION**

Crest cannot show transferring this case from the UPC Illinois's home forum to the District of New Jersey would be "clearly more convenient."  Further, the interests of justice demand this Court retain jurisdiction and venue over this matter.  UPC should be allowed to protect its property rights in its home forum.  Therefore, Crest's motion to transfer venue must be denied.

Dated this 14th day of May, 2008.

s/ Amy L. Lindner
David G. Hanson
Amy L. Lindner
Attorneys for Plaintiff
Ultrasonic Power Corporation
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 2100
Milwaukee, WI 53202
Telephone:  414-298-1000
Facsimile:  414-298-8097
alindner@reinhartlaw.com

REINHART\2310547